# EXHIBIT A



**null / ALL**
**Transmittal Number: 21306811**
**Date Processed: 03/20/2020**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Daniel F. Gray<br>True World Holdings LLC<br>1051 Bloomfield Ave<br>Ste 16<br>Clifton, NJ 07012-2131 |

| | |
|---|---|
| **Entity:** | True World Foods Chicago LLC<br>Entity ID Number  2565298 |
| **Entity Served:** | True World Foods Chicago, LLC. |
| **Title of Action:** | Alejandro Gil vs. True World Foods Chicago, LLC. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Cook County Circuit Court, IL |
| **Case/Reference No:** | 2020CH02846 |
| **Jurisdiction Served:** | Illinois |
| **Date Served on CSC:** | 03/17/2020 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Catherine T. Mitchell<br>312-233-1550 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

Return Date: No return date scheduled
Hearing Date: 7/7/2020 10:00 AM - 10:00 AM
Courtroom Number: 2302
Location: District 1 Court
     Cook County, IL



FILED
3/9/2020 1:34 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH02846

8786002

FILED DATE: 3/9/2020 1:34 PM   2020CH02846

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Alejandro Gil and Manuel Hernandez
_____
                      (Name all parties)

          v.

True World Foods Chicago, LLC.
_____

Case No.   2020CH02846

☑ **SUMMONS**   ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

True World Foods Chicago, LLC.

R/A: Illinois Corporation Service C
801 Adlai Stevenson Drive
Springfield, IL. 62703

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias Summons**          **(08/01/18) CCG 0001 B**

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.**

Atty. No.: 43734

Atty Name: Catherine T. Mitchell

Atty. for: Alejandro Gil and Manuel Hernandez

Address: 100 N. Riverside Plaza, Suite 2150

City: Chicago

State: IL    Zip: 60606

Telephone: 312-233-1550

Primary Email: cmitchell@stephanzouras.com

Witness: 3/9/2020 1:34 PM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

FILED DATE: 3/9/2020 1:34 PM  2020CH02846

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 3/9/2020 1:34 PM   2020CH02846

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

- ⦿ Richard J Daley Center
  50 W Washington
  Chicago, IL 60602

- ○ District 2 - Skokie
  5600 Old Orchard Rd
  Skokie, IL 60077

- ○ District 3 - Rolling Meadows
  2121 Euclid
  Rolling Meadows, IL 60008

- ○ District 4 - Maywood
  1500 Maybrook Ave
  Maywood, IL 60153

- ○ District 5 - Bridgeview
  10220 S 76th Ave
  Bridgeview, IL 60455

- ○ District 6 - Markham
  16501 S Kedzie Pkwy
  Markham, IL 60428

- ○ Domestic Violence Court
  555 W Harrison
  Chicago, IL 60607

- ○ Juvenile Center Building
  2245 W Ogden Ave, Rm 13
  Chicago, IL 60602

- ○ Criminal Court Building
  2650 S California Ave, Rm 526
  Chicago, IL 60608

### Daley Center Divisions/Departments

- ○ Civil Division
  Richard J Daley Center
  50 W Washington, Rm 601
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Chancery Division
  Richard J Daley Center
  50 W Washington, Rm 802
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Domestic Relations Division
  Richard J Daley Center
  50 W Washington, Rm 802
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Civil Appeals
  Richard J Daley Center
  50 W Washington, Rm 801
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Criminal Department
  Richard J Daley Center
  50 W Washington, Rm 1006
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ County Division
  Richard J Daley Center
  50 W Washington, Rm 1202
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Probate Division
  Richard J Daley Center
  50 W Washington, Rm 1202
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Law Division
  Richard J Daley Center
  50 W Washington, Rm 801
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ○ Traffic Division
  Richard J Daley Center
  50 W Washington, Lower Level
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Return Date: No return date scheduled
Hearing Date: 7/7/2020 10:00 AM - 10:00 AM
Courtroom Number: 2302
Location: District 1 Court
        Cook County, IL

FILED DATE: 3/9/2020 1:13 PM   2020CH02846

FILED
3/9/2020 1:13 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH02846

8785242

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| ALEJANDRO GIL and MANUEL HERNANDEZ individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRUE WORLD FOODS CHICAGO, LLC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 2020CH02846 |

### CLASS ACTION COMPLAINT

Plaintiffs Alejandro Gil and Manuel Hernandez ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), by and through their attorneys, bring the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against True World Foods Chicago, LLC. ("True World" or "Defendant"), its subsidiaries and affiliates, to redress and curtail Defendant's unlawful collection, use, storage, and disclosure of Plaintiffs' sensitive and proprietary biometric data. Plaintiffs allege as follows upon personal knowledge as to themselves, their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### NATURE OF THE ACTION

1. Defendant, True World Foods Chicago, LLC, is a leading distributor of seafood.

2. When Defendant hires an employee, including Plaintiffs, he or she is enrolled in its employee database(s) using a scan of his or her handprint. Defendant uses the employee database(s) to monitor the time worked by its employees.

FILED DATE: 3/9/2020 1:13 PM   2020CH02846

3.      While many employers use conventional methods for tracking time worked (such as ID badges or punch clocks), Defendant's employees are required, as a condition of employment, to have their handprints scanned by a biometric timekeeping device.

4.      Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendant's – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks or authenticators, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

5.      Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – handprints are unique, permanent biometric identifier associated with each employee. This exposes Defendant's employees to serious and irreversible privacy risks. For example, if a database containing handprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Equifax, Facebook/Cambridge Analytica and Suprema data breaches or misuses – employees have **_no_** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

6.      In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* www.opm.gov/cybersecurity/cybersecurity-incidents.

7.      An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and facial photographs – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of*

2

FILED DATE: 3/9/2020 1:13 PM    2020CH02846

*Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138.

8.    In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

9.    In August 2019 it was widely reported that Suprema, a security company responsible for a web-based biometrics lock system that uses fingerprints and facial geometry scans in 1.5 million locations around the world, maintained biometric data and other personal information on a publicly accessible, unencrypted database. Major Breach Found in Biometrics System Used by Banks, UK police and Defense Firms, The Guardian (Aug. 14, 2019), available at https://www.theguardian.com/technology/2019/aug/14/major-breach-found-in-biometrics-system-used-by-banks-uk-police-and-defence-firms.

10.    This practice has been criticized by lawmakers. Some states, including Illinois, have refused to comply with law enforcement's invasive requests. *State Denying Facial Recognition Requests*, Jacksonville Journal-Courier (July 9, 2019), *available at* https://www.myjournalcourier.com/news/article/State-denying-facial-recognition-requests-14081967.php.

11.    Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq.*, specifically to regulate companies that collect, store and use Illinois citizens' biometrics, such as handprints.

FILED DATE: 3/9/2020 1:13 PM    2020CH02846

12.     Notwithstanding the clear and unequivocal requirements of the law, Defendant disregards Plaintiffs' and other similarly-situated employees' statutorily protected privacy rights and unlawfully collected, stored, disseminated, and used Plaintiffs' and other similarly-situated employees' biometric data in violation of BIPA. Specifically, Defendant violated and continues to violate BIPA because it did not and continues not to:

   a.     Properly inform Plaintiffs and others similarly situated in writing of the specific purpose and length of time for which their handprints were being collected, obtained, stored, and used, as required by BIPA;

   b.     Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and other similarly-situated employees' handprints, as required by BIPA;

   c.     Obtain a written release from Plaintiffs and others similarly situated to collect, obtain, store, disseminate, or otherwise use their handprints, as required by BIPA; and

   d.     Obtain consent from Plaintiffs and others similarly situated to disclose, redisclose, or otherwise disseminate their handprints to a third party as required by BIPA.

13.     Accordingly, Plaintiffs, on behalf of themselves as well as the putative Class, seek an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiffs and the proposed Class.

## PARTIES

14.     Plaintiff Alejandro Gil is a natural person and a resident of the State of Illinois.

15.     Plaintiff Manuel Hernandez is a natural person and a resident of the State of Illinois.

16.     Defendant, True World Foods Chicago, LLC, is a Chicago limited liability company with its principal place of business in Cook County that conducts business throughout the State of Illinois, including Cook County.

4

FILED DATE: 3/9/2020 1:13 PM   2020CH02846

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over Defendant pursuant to 735 ILCS § 5/2-209 because Defendant is a citizen of Illinois, its principal place of business is in Illinois, and it committed the statutory violations alleged herein in Illinois.

18.     Venue is proper in Cook County because Defendant conducts business in this State, conducts business transactions in Cook County, and committed the statutory violations alleged herein in Cook County, Illinois.

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act.

19.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

20.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the

FILED DATE: 3/9/2020 1:13 PM   2020CH02846

now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

21. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5.

22. Additionally, to ensure compliance, BIPA provides that, for <u>each</u> violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS § 14/20.

23. BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a. Informs the subject in writing that a biometric identifier or biometric information is being collected, obtained, stored and used;

    b. Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, obtained, stored, and used; and

    c. Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS § 14/15(b).

24. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS § 14/10.

6

25.     Biometric identifiers include retina and iris scans, voiceprints, fingerprints and face geometry, and – most importantly here – handprints. *See* 740 ILCS § 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

26.     BIPA establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS § 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for such disclosure. *See* 740 ILCS § 14/15(d)(1).

27.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS § 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS § 14/15(a).

28.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at a heightened risk for identity theft and left without any recourse.

29.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for

FILED DATE: 3/9/2020 1:13 PM    2020CH02846

which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

30.     Plaintiffs, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

**II.     Defendant Violates the Biometric Information Privacy Act.**

31.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented with using individuals' biometric data stopped doing so.

32.     However, Defendant failed to take note of the shift in Illinois law governing the collection, obtainment, use, storage, and dissemination of biometric data. As a result, Defendant continues to collect, obtain, store, use and disseminate its employees' biometric data in violation of BIPA.

33.     Specifically, when employees are hired, Defendant requires them to have their handprints scanned to enroll them in its employee database(s).

34.     Defendant uses an employee time tracking system that requires employees to use their handprint as a means of authentication. In accordance with Defendant's policy, its employees are required to use their handprints to clock-in and clock-out, recording their time worked.

35.     Upon information and belief, Defendant fails to inform its employees that it discloses or disclosed their handprint data to at least one third-party vendor and likely others; fails to inform its employees that it discloses their handprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform its employees of the

8

FILED DATE: 3/9/2020 1:13 PM   2020CH02846

purposes and duration for which it collects or obtains their sensitive biometric data; and, fails to obtain written releases from employees before collecting their handprints.

36.  Defendant fails to publish a written, publicly-available policy identifying its retention schedule and guidelines for permanently destroying employees' biometric data when the initial purpose for collecting or obtaining their biometrics is no longer relevant, as required by BIPA.

37.  The Pay by Touch bankruptcy that catalyzed the passage of BIPA, as well as the recent data breaches, highlights why such conduct – where individuals are aware that they are providing a handprint, but not aware of to whom or for what purposes they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as a handprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes, and for how long. Defendant disregards these obligations and its employees' statutory rights and instead unlawfully collects, stores, uses and disseminates its employees' biometric identifiers and information, without first receiving the individual's informed written consent required by BIPA.

38.  Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs' and other similarly-situated individuals' biometric data and has not and will not destroy Plaintiffs' and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interaction with the company.

39.  Defendant does not tell Plaintiffs and others similarly situated what might happen to their biometric data if and when Defendant merges with another company, or worse, if and when

9

FILED DATE: 3/9/2020 1:13 PM    2020CH02846

Defendant's business folds, or when the other third parties that have received employees' biometric data businesses fold.

40.     Since Defendant neither publishes a BIPA-mandated data retention policy nor discloses the purposes for its collection and use of biometric data, Defendant's employees have no idea whether Defendant sells, discloses, rediscloses, or otherwise disseminates their biometric data. Moreover, Plaintiffs and others similarly situated are not told to whom Defendant discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

41.     These violations raise a material risk that Plaintiffs' and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

42.     By and through the actions detailed above, Defendant disregards Plaintiffs' and other similarly-situated individuals' legal rights in violation of BIPA.

**III.     Plaintiffs Alejandro Gil and Manuel Hernandez's Experience**

43.     Plaintiff Alejandro Gil has worked for True World as a driver from 2005 to 2017, at its location at 950 Chase Ave Elk Grove Village, IL 60007.

44.     Plaintiff Manuel Hernandez worked for True World as a driver from 2001 to 2018, at its location at 950 Chase Ave Elk Grove Village, IL 60007.

45.     As a condition of their employment, Plaintiffs were required to scan their handprints so Defendant could use it as an authentication method to track their time.

46.     Defendant stored Plaintiffs' handprint data in their employee database(s).

47.     Plaintiffs were required to scan their handprints each time they began and ended their workdays.

10

FILED DATE: 3/9/2020 1:13 PM   2020CH02846

48.     Defendant did not inform Plaintiffs in writing or otherwise of the purpose(s) and length of time for which their handprint data was being collected and obtained, did not receive a written release from Plaintiffs to collect, obtain, store, or use their handprint data, did not publish a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' handprint data, and did not obtain Plaintiffs' consent before disclosing or disseminating their biometric data to third parties.

49.     Plaintiffs have never been informed of the specific limited purposes or length of time for which Defendant collects, obtains, stores, uses and/or disseminates their biometric data.

50.     Plaintiffs have never been informed of any biometric data retention policy developed by Defendant, nor had they ever been informed of whether Defendant would ever permanently delete their biometric data.

51.      Plaintiffs have never been provided with nor ever signed a written release allowing Defendant to collect, obtain, store, use or disseminate their biometric data.

52.     Plaintiffs had continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's multiple violations of BIPA alleged herein.

53.     No amount of time or money can compensate Plaintiffs if their biometric data has been compromised by the lax procedures through which Defendant captured, stored, used, and disseminated their and other similarly-situated individuals' biometrics. Moreover, Plaintiffs would not have provided their biometric data to Defendant if they had known that Defendant would retain such information for an indefinite period of time without their consent.

54.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order

11

FILED DATE: 3/9/2020 1:13 PM  2020CH02846

to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

55.     As Plaintiffs are not required to allege or prove actual damages in order to state a claim under BIPA, they seek statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

56.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS § 5/2-801, Plaintiffs bring claims on their own behalf and as representatives of all other similarly-situated individuals pursuant to BIPA, 740 ILCS § 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

57.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it *first* (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose(s) and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS § 14/15.

58.     Plaintiffs seek class certification under the Illinois Code of Civil Procedure, 735 ILCS § 5/2-801, for the following class of similarly-situated individuals under BIPA:

> All individuals working for Defendant in the State of Illinois who had their handprint or other biometric data collected, captured, received, or otherwise obtained, maintained, stored or disclosed by Defendant during the applicable statutory period.

59.     This action is properly maintained as a class action under 735 ILCS § 5/2-801

12

FILED DATE: 3/9/2020 1:13 PM   2020CH02846

because:

A.    The class is so numerous that joinder of all members is impracticable;

B.    There are questions of law or fact that are common to the class;

C.    Plaintiffs' claims are typical of the claims of the class; and,

D.    Plaintiffs will fairly and adequately protect the interests of the class.

**Numerosity**

60.    The total number of putative class members exceeds fifty (50) individuals. The exact number of class members can easily be determined from Defendant's records.

**Commonality**

61.    There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiffs and all members of the Class have been harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

A.    Whether Defendant collected, captured, maintained, stored or otherwise obtained Plaintiffs' and the Class's biometric identifiers or biometric information;

B.    Whether Defendant properly informed Plaintiffs and the Class of its purposes for collecting, obtaining, using, storing and disseminating their biometric identifiers or biometric information;

C.    Whether Defendant properly obtained a written release (as defined in 740 ILCS § 14/10) to collect, obtain, use, store and disseminate Plaintiffs' and the Class's biometric identifiers or biometric information;

D.    Whether Defendant has disclosed or redisclosed Plaintiffs' and the Class's biometric identifiers or biometric information;

E.    Whether Defendant has sold, leased, traded, or otherwise profited from Plaintiffs' and the Class's biometric identifiers or biometric information;

F.    Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial

13

FILED DATE: 3/9/2020 1:13 PM    2020CH02846

purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of its last interaction with the individual, whichever occurs first;

G.      Whether Defendant complies with any such written policy (if one exists);

H.      Whether Defendant's violations of BIPA have raised a material risk that Plaintiffs' and the putative Class' biometric data will be unlawfully accessed by third parties;

I.      Whether Defendant used Plaintiffs' and the Class's handprints to identify them;

J.      Whether the violations of BIPA were committed negligently; and

K.      Whether the violations of BIPA were committed intentionally or recklessly.

62.     Plaintiffs anticipate that Defendant will raise defenses that are common to the class.

## Adequacy

63.     Plaintiffs will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiffs and class members. Plaintiffs, moreover, have retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## Typicality

64.     The claims asserted by Plaintiffs are typical of the class members they seek to represent. Plaintiffs have the same interests and suffer from the same unlawful practices as the class members.

65.     Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS § 5/2-801.

14

FILED DATE: 3/9/2020 1:13 PM   2020CH02846

### Predominance and Superiority

66.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

67.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

### FIRST CAUSE OF ACTION

**Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule**

68.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

69.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically,

15

FILED DATE: 3/9/2020 1:13 PM   2020CH02846

those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

70.     Defendant fails to comply with these BIPA mandates.

71.     Defendant qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

72.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected and obtained by Defendant (in the form of their handprints), as explained in detail in Sections II and III, *supra. See* 740 ILCS § 14/10.

73.     Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

74.     Defendant failed to publish a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

75.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs' and the Class's biometric data and has not and will not destroy Plaintiffs' or the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

76.     On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of

FILED DATE: 3/9/2020 1:13 PM   2020CH02846

$5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

### SECOND CAUSE OF ACTION
**Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information**

77.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

78.     BIPA requires companies to obtain informed written consent from individuals before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject...in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject...in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information..." 740 ILCS § 14/15(b) (emphasis added).

79.     Defendant fails to comply with these BIPA mandates.

80.     Defendant qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

81.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected and obtained by Defendant (in the form of their handprints), as explained in detail in Sections II and III, *supra. See* 740 ILCS § 14/10.

82.     Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

17

FILED DATE: 3/9/2020 1:13 PM   2020CH02846

83.     Defendant systematically and automatically collected, obtained, used, stored and disseminated Plaintiffs' and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS § 14/15(b)(3).

84.     Defendant did not inform Plaintiffs and the Class in writing that their biometric identifiers and/or biometric information were being collected, obtained, stored, used and disseminated, nor did Defendant inform Plaintiffs and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used, and disseminated as required by 740 ILCS § 14/15(b)(1)-(2).

85.     By collecting, storing, and using Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS § 14/1, *et seq*.

86.     On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## THIRD CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent

87.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

18

FILED DATE: 3/9/2020 1:13 PM 2020CH02846

88.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS § 14/15(d)(1).

89.     Defendant fails to comply with this BIPA mandate.

90.     Defendant qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

91.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected and obtained by Defendant (in the form of their handprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

92.     Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

93.     Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiffs' and the Class's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS § 14/15(d)(1).

94.     By disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS § 14/1, *et seq.*

95.     On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA

pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiffs Alejandro Gil and Manuel Hernandez respectfully request that this Court enter an Order:

A.  Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs Alejandro Gil and Manuel Hernandez as Class Representatives, and appointing Stephan Zouras, LLP, as Class Counsel;

B.  Declaring that Defendant's actions, as set forth above, violate BIPA;

C.  Awarding statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D.  Declaring that Defendant's actions, as set forth above, were intentional and/or reckless;

E.  Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class, including an Order requiring Defendant to collect, obtain, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F.  Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

G.  Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and,

H.  Awarding such other and further relief as equity and justice may require.

Date:  March 9, 2020                        Respectfully Submitted,

                                            */s/ Catherine T. Mitchell*

                                            Ryan F. Stephan
                                            James B. Zouras
                                            Catherine T. Mitchell
                                            Stephan Zouras, LLP

20

FILED DATE: 3/9/2020 1:13 PM   2020CH02846

100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
Firm ID: 43734

**ATTORNEYS FOR PLAINTIFF**

FILED DATE: 3/9/2020 1:13 PM   2020CH02846

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on March 9, 2020, I electronically filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Catherine T. Mitchell*